THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMÓN ÁLVAREZ SOLARES, k/a GOLINGO, Defendant and Appellant.

No. CR-66-85.    Decided February 27, 1968.

*Francisco Coll Moya* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

This is a conviction of involuntary manslaughter. On the night of September 11, 1962, three persons were traveling on the safety zone on the Carolina road towards Loíza Street. They were traveling one after the other. At the extreme right-hand side of the safety zone there was a ditch which contained water.

The three persons walked on their right side towards Loíza Street, that is, with their backs toward the traffic, in the same direction. The last one in the line suddenly cried: "Look how that car is coming." The one in front of him looked and both "flew" to the other side of the ditch. One of these persons, in his testimony in court said that the car was coming at about 80 miles per hour. That witness says (R. p. 118): "Yes, and when I looked, after we flew, that was when 'Golingo' hit him with the car and threw him into the ditch and continued along the ditch, and when he returned to the road that was when the body was seen." The deceased fell flat on his face in the ditch. No brakes were applied. The automobile did not stop after the accident. The day after the accident the witness again saw the automobile which ran over the victim, the same car, a Cadillac.

Another witness for the People testified that at the time of the accident he was about 100 meters away, on a curve, and saw a car coming at about 50 or 60 miles per hour. The car was a Cadillac. In passing in front of the witness it zigzagged and continued at high speed until it disappeared on the curve. It passed by the side of the witness at a distance of about 3 feet. A few seconds later a man said a person

had been killed. He ran to the place and saw the victim in the ditch. He knew that the automobile belonged to "Golingo".* That same night the witness went to appellant's house with a police officer and saw the Cadillac at the former's house. This witness was not cross-examined.

The People offered the testimony of a police officer who took part in the investigation. He found the body facing downward in a ditch with the head towards the same direction in which the victim was walking. At that point the road had a width of 18 feet five inches, it was in good condition and it had not rained. The safety zone was 8 feet 1 inch wide. He found marks of the automobile tires on the loose dirt of the safety zone, that is, outside the pavement. There were 66 feet from the victim's foot to the place where said marks entered the aforementioned safety zone. There was light and visibility in that place. This witness was not cross-examined.

The medical expert testimony informed that the cause of the death was, among other internal injuries, a trauma caused by a transection of the spinal cord at the second cervical segment. The doctor who performed the autopsy testified that it was not necessary to cut the cord with the scalpel because it was already traumatically cut in flaps.

In this appeal appellant assigns four errors: (1) In accepting, as evidence, the statement offered by him during the investigation of the case. (2) The court erred in passing defendant's statement to the jury without there being any evidence of its voluntariness and without duly instructing them. (3) The court erred in overruling the objection to the illegal search in relation to prosecuting attorney Noriega's testimony. (4) It erred in admitting in evidence Exhibit No. 5 of the People.

---

* According to the information appellant was known as Golingo.

774

The first error refers to the admission in evidence of defendant's extrajudicial confession. Prosecuting Attorney Noriega, who took said statement, testified before the judge, without the jury being present, as to the circumstances under which it was taken. The defense accepted the complete voluntariness of said confession, without any coercion whatsoever. It maintained, however, that it was inadmissible because of the absence of certain warnings in relation to legal assistance and the right not to incriminate himself. The prosecuting attorney accepted that the warnings as to legal assistance were not made.

■ The statement was given on September 12, 1962. At that time the present Rules of Criminal Procedure were not in force, particularly Rules 4 and 22. On the date on which the trial was held, August 10 and 11, 1965, *Rivera Escuté v. Delgado, Warden*, 92 P.R.R 746, which was decided on October 26, 1965, had not been decided yet. In the light of the state of law applicable on the date on which the statement was taken and on the date the trial was held, the same was not inadmissible on the grounds of *Rivera Escuté, supra.*

■ As to the warning in relation to the right not to incriminate himself, the statement suffers from the same defect we considered in *People v. Figueroa González, ante*, p. 96, where in a printed form the deponent states ". . . subsequent to the legal warnings which have been made to me," without stating which. Later, at the end of the statement it appears that he is warned of his right not to incriminate himself and that what is said in the statement may be used against him. As in that case, we repeat that said warnings should precede, specifically, every sworn statement.

■ However, considering all the circumstances under which the statement was offered in this case, the complete absence of coercion to compel defendant to offer the statement, the complete voluntariness of the same and the fact

that there appears some warning before it is signed, the defect is not reversible in this case.

In his extrajudicial statement appellant accepted having run over the victim with his Cadillac, although he said that the victim had tried to cross and that he (appellant) was driving at 35 miles per hour. He did not apply the brakes. He did not stop either for fear of being attacked. He went to his house, left the car there and went in another vehicle to see his attorney. He did not go immediately to police headquarters because he wanted to be accompanied by another person. At 2:30 a.m. he appeared at police headquarters to surrender. There he offered his sworn statement before the prosecuting attorney.

■ The second error was not committed. After the court without a jury, subsequent to the hearing of evidence on its voluntariness, admitted the statement, it was not necessary, as appellant maintains, that evidence for the prosecution on this matter be repeated before the jury. That was the former rule which does not prevail anymore after we adopted the one laid down in *Jackson* v. *Denno*, 378 U.S. 368. The trial court duly instructed the jury that said statement must be weighed and appraised as a whole with the rest of the evidence in the procedure to reach a verdict.

■ The fourth error was not committed either. Exhibit 5 of the People is one of several photographs of the victim taken while he lay in the ditch. There the victim is covered with a cloth and only part of his legs and his feet show. There is nothing grotesque in it, different from the others which are accepted, and which could unduly exacerbate the jury. Three small candles may be seen burning beside the corpse. The jury is familiarized with this pious expression of our common people when violent deaths occur in the public thoroughfare.

The third error refers to a piece of oral evidence which appellant relates to an illegal search. The prosecuting at-

torney appeared in person at the place where the events occurred and during the investigation he went with a police officer to appellant's residence.[1] The house, a frame house, had a front fence with a gate, closed but not locked. The fence was described as having the height of the railing before the jury. The prosecuting attorney walked to the entrance door, knocked, and nobody answered. He knocked at the side windows and nobody answered either. On one side of the house, in the front, there was a truck and the Cadillac inside a sort of open garage without walls or doors. On entering the yard through the gate the vehicles were visible, and they were visible from the street if a person were disposed to look at them. The prosecuting attorney examined the Cadillac. The hood had a dent and it was hot and wet. The tires were also wet. He ordered that the vehicle be taken to police headquarters and that photographs be taken. Said findings were testified by the prosecuting attorney over the objection of the defense.

■ The constitutional protection against unreasonable searches and seizures—Constitution of the Commonwealth, Art. II, § 10—extends likewise to the lot and tract of land which together with the house constitute the dwelling unit, as well as the accessory buildings connected thereto. This is the doctrine which prevails.

■■ In view of the circumstances of this case, we are not in a condition to decide that there was an unreasonable search of appellant's residence for the mere fact that the prosecuting attorney passed through the unlocked gate to knock at the front door or on one side. In the urban dwellings that is the usual manner to call on a person or to knock at his door. Appellant did not stop when he caused the death,

---

[1] The witness who was at a distance of about 100 meters and saw appellant pass in his Cadillac a few seconds before and ran to the place where the accident occurred, testified that that same night he went with a police officer to defendant's house and saw the Cadillac there.

and the prosecuting attorney acted correctly in trying to localize the former where he thought appellant could be according to the information obtained during the investigation at the scene of the accident.

The record does not show that the presence of the vehicle at police headquarters was the decisive factor which impelled appellant to make a confession which otherwise would not have been made. It being so, it is not necessary to decide, to pass on this case, whether or not the prosecuting attorney acted according to law in ordering that the vehicle be transferred from the residence.

■ . Even assuming that prosecuting attorney Noriega's remarks in relation to the exterior conditions of the Cadillac were considered inadmissible by reason of an unreasonable search, they only constitute evidence on some corroborative elements, perhaps important in a situation depending solely on circumstantial evidence, but not decisive in the determination of appellant's guilt where according to the record the jury had direct evidence, irrespective of said remarks, of the occurrence of the accident, as well as of the vehicle and the person who caused it. In his testimony the prosecuting attorney did not tell the jury that the house, where the vehicle was found, was defendant's dwelling.

The trial court ordered appellant to serve two years in jail and the suspension of his driving license for a term of two years as of the date of his release from jail. According to *People* v. *Pérez Escobar*, 91 P.R.R. 9 (1964), and an appeal having been taken from the judgment of conviction rendered in this case on October 1, 1965, the same will be modified to order that the suspension of the license will start to run as of the date the judgment becomes final and the defendant starts to serve it, and as thus modified it will be affirmed.*

---

* Compiler's Note: By Order of April 5, 1968, the Court provided:

"Our opinion and judgment of February 27, 1968, are hereby amended by eliminating the modification ordered of the judgment entered by the Superior Court, San Juan Part, on October 1, 1965. The judgment appealed from is affirmed *nunc pro tunc*, without any modification.

"It was so agreed by the Court as witnesses the signature of the Chief Justice."